United States District Court
Southern District of Texas
**ENTERED**
August 12, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN DANIEL SHELTON, | § | |
| TDCJ #01869779, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-23-1799 |
| | § | |
| JOSEPH M. CURRY, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against defendants University of Texas Medical Branch ("UTMB") employees Joseph M. Curry and Amanda J. Gregory for violations of his constitutional rights and state tort law. Defendants filed a motion for summary judgment with supporting exhibits (Docket Entries No. 18, 19), to which plaintiff filed a response (Docket Entry No. 20) and defendants filed a reply (Docket Entry No. 21).

Having carefully considered the motion, the response, the reply, the exhibits, the pleadings, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons shown below.

## I.  BACKGROUND AND CLAIMS

Defendant Joseph M. Curry is a UTMB physician assistant who was employed at the Texas Department of Criminal Justice ("TDCJ") Byrd Unit in Huntsville, Texas at all times

relevant to this lawsuit.  Defendant Amanda J. Gregory is a licensed vocational nurse who was employed at the Byrd Unit at all times relevant to this lawsuit.

Plaintiff was diagnosed with COVID-19 on August 5, 2021, while incarcerated at the Byrd Unit, and was placed in medical quarantine.  He states that he complained to defendant Gregory on August 9, 2021, that he was experiencing blurry vision; Gregory purportedly told him that he was in quarantine and could be seen by medical staff only for issues related to COVID-19.  She told him to submit a sick call request when he was released from quarantine.

Plaintiff subsequently tested negative for the virus on August 20, 2021, and was returned to general population housing.  On September 8, 2021, he submitted a request to be seen by medical staff, and was seen by defendant Gregory on September 11, 2021, for alleged complaints of blurred vision, floating objects, and bright flashes of light.  Gregory administered a basic eye chart test, but plaintiff states she did not report his complaints of seeing flashes of light.

Plaintiff returned to clinic on September 17, 2021, and was again seen by Gregory. He reported increased blurry vision and "orbs of light," and asked to see a specialist. Gregory again performed a basic eye chart test, and said an appointment would be made with a specialist.  According to plaintiff, defendant physician assistant Curry came into the room and told him he needed glasses and to stop complaining about his vision.   Plaintiff

acknowledges that a referral to a specialist was made, but complains that he never saw a specialist while at the Byrd Unit.

Plaintiff was transferred to the Wallace Unit a few days later on September 21, 2021. He complained in writing to Wallace Unit medical staff in September and October 2021 that he was experiencing "floating blurry objects," loss of peripheral vision in his left eye, and "blurry objects and floating spots" that had "gotten bigger" over the past two weeks. (Docket Entry No. 19-2, Exhibit D.) When Wallace Unit medical staff gave him an eye chart test on November 2, 2021, he stated he was unable to see the chart with his left eye. He was seen by an ophthalmologist at the Texas Tech University Medical Center the next day and was found to have a detached retina. He underwent laser surgery to repair the detached retina on November 8, 2021. A second surgery was undertaken in December 2021. Plaintiff experienced complications following the second surgery, but attributes those problems to individuals other than defendants Curry and Gregory.

Plaintiff claims in this lawsuit that defendants Curry and Gregory were deliberately indifferent to his serious medical needs in not providing him proper treatment or sending him to a specialist during August and September 2021. He additionally brings state law claims against them for negligence and/or malpractice. He seeks a declaratory judgment and monetary damages of approximately $2 million.

Defendants Curry and Gregory seek summary judgment dismissal of plaintiff's claims on the limited basis of his failure to exhaust his administrative remedies. Defendants state

3

that plaintiff did not file any grievances regarding his claims until August 2022, nearly a year after his last clinical contact with them at the Byrd Unit.  Plaintiff responds that he filed step 1 and step 2 grievances, but does not contest defendants' summary judgment evidence that shows the grievances were untimely by nearly a year.

## II.  ANALYSIS

A.   <u>FRCP 56</u>

Summary judgment under Federal Rule of Civil Procedure ("FRCP") 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  If the movant satisfies its initial responsibility of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to identify specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 106, 323 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  A complete failure of proof on an

essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 323.

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Liberty Lobby, Inc.*, 477 U.S. at 255. However, allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Even verified allegations cannot defeat summary judgment if they are conclusory allegations, unsubstantiated assertions, or constitute only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see also Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018).

The summary judgment process does not involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020). Disputed factual issues must be resolved in favor of the nonmoving party, *Little*, 37 F.3d at 1075 (5th Cir. 1994), and all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

Because plaintiff is proceeding *pro se* in this lawsuit, the Court construes his pleadings liberally, subjecting them to less stringent standards than formal pleadings drafted

by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, *pro se* litigants must still abide by the rules that govern the federal courts. *E.E.O.C. v. Simbaki*, *Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014).

      B.    <u>Exhaustion Requirement</u>

      Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before bringing a civil rights claim based on allegations occurring while imprisoned. The prisoner must strictly comply with administrative deadlines and other procedures with no exceptions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison inmate grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). *See also Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("[U]nder our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

      "Since exhaustion is an affirmative defense, the burden is on [the defendants] to demonstrate that [plaintiff] failed to exhaust available administrative remedies." *Dillon*, 596 F.3d at 266. Defendants in this case present probative summary judgment evidence showing that, as applicable to Texas state prisoners, TDCJ promulgated a formal two-step grievance procedure for exhausting administrative remedies. (Docket Entry No. 19-1, Exhibit C, pp. 86–88.) Prior to filing a grievance, a prisoner must try to resolve the issue informally. If that

does not work, the prisoner must submit to appropriate prison officials a step 1 grievance within fifteen days of the alleged incident or occurrence. *Id.* When filing a grievance, an inmate must clearly state the specific action required to resolve the complaint. Prison officials then have forty days to decide the grievance. If the prisoner remains dissatisfied, he may appeal by filing a step 2 grievance within fifteen days thereafter. *Id.* Prison officials have another forty days to issue a decision on the appeal. *Id.* Only after exhausting both steps of the grievance process may a prisoner pursue a federal lawsuit.

    C.    <u>Failure to Exhaust</u>

Plaintiff's complaint alleges that defendants Curry and Gregory were deliberately indifferent to his serious medical needs by not providing proper treatment or having him seen by a specialist in August and September 2021, prior to his transfer to the Wallace Unit on September 21, 2021. By plaintiff's own factual allegations, he knew as of September 21, 2021, that Curry and Gregory had not provided certain treatment or obtained his examination by a specialist prior to his transfer.

As noted above, the written, formal TDCJ grievance process requires a prisoner to file a step 1 grievance within fifteen days of the alleged incident or occurrence. Thus, plaintiff's step 1 grievance as to Curry and Gregory's failure to provide proper treatment or obtain his examination by a specialist was due, at the very latest, by October 6, 2021. The probative summary judgment evidence submitted by defendants shows that plaintiff did not file any step 1 grievances related to defendants Curry and Gregory or his eye-related medical

7

treatment at the Byrd Unit between July 1, 2021, and August 1, 2022.  (Docket Entry No. 18, Exhibit A.)  To the contrary, grievances filed by plaintiff in December 2021 complained that certain commissary purchases and other property items had been lost or stolen from his locker at the Wallace Unit while he was undergoing eye surgery and hospitalization.  (Docket Entry No. 18-1, pp. 3–17).  Grievances filed by plaintiff in June 2022 grieved his inability to complete a video visit with family at the Memorial (Darrington) Unit due to equipment issues.  *Id*., pp. 18–22.  Grievances filed by plaintiff in December 2022 complained that a breakfast meal sack thrown by an officer through his cell bars hit him in the face while he was sleeping at the Memorial (Darrington) Unit.  *Id*., pp. 23–27.

Not until August 4, 2022, while housed at the Memorial (Darrington) Unit, did plaintiff file a step 1 grievance complaining that he was not properly treated or seen by a specialist for his vision symptoms while at the Byrd Unit.  The grievance was returned unprocessed, marked "Grievable time period has expired."  *Id*., pp. 28–31.  A Memorial (Darrington) Unit officer attempted to inform plaintiff in person that his grievance was untimely; the officer reported that

> On the date of 8-25-22 I went to speak with inmate Shelton concerning his grievance.  I informed the inmate that his time had expired due to the incident happen [*sic*] in June of 2021.[1]  He did not want to listen [*sic*] he told me that he did not care about TDCJ policies and that he was going to do what he had to do for his legal purpose and he did not care about what I said.

*Id*., p. 32.

---

[1]Although plaintiff stated in his untimely grievance that the Byrd Unit events occurred in June 2021, plaintiff pleads in his complaint that they occurred in August and September 2021.

Plaintiff filed additional untimely and/or redundant grievances in August 2022 through October 2022, complaining about his medical care and delays in obtaining eye surgery at various prison units. *Id*., pp. 35–43. The grievances were returned unprocessed, marked "Grievable time period has expired" or "Redundant." *Id*. These and later grievances complained primarily of events related to his surgery follow-ups, the second surgery, and his on-going vision issues, and did not involve defendants Curry and Gregory. Plaintiff's claims as to these subsequent events remain pending in his other lawsuits.[2]

Thus, defendants Curry and Gregory have presented probative summary judgment evidence that plaintiff did not file a step 1 grievance regarding his eye-related medical care at the Byrd Unit until August 4, 2022, long after the fifteen-day deadline mandated by the TDCJ grievance process had expired. In responding to the motion for summary judgment, plaintiff presents no evidence contesting defendants' summary judgment evidence or their argument that he failed to pursue a *timely* step 1 grievance against them. To the contrary, plaintiff responds as follows:

> Your Honor, I have done my due diligence in filing grievances in order to exhaust. I have filed more than several and have been denied remedy. Sir, I am blind in my left eye. There is no remedy in filing step 1 and step 2 grievances, except to exhaust remedy [*sic*] and plead with the courts. The discovery itself will show I have filed my step 1 and step 2 grievances, as well as show [*sic*] material fact that I have had two surguries [*sic*] done to my left eye in which the lazer [*sic*] repair was done to save my eye. That lazer [*sic*] is the cause of so much sight lost and it can not be undone. So how is it that I failed to exhaust?

---

[2]*See Shelton v. Curry*, C.A. No. 3:23-cv-0154 (S.D. Tex.); *Shelton v. Boedeker*, C.A. No. 1:23-cv-00117-BU (N.D. Tex.).

(Docket Entry No. 20, p. 2.)

The Court is not unsympathetic to plaintiff's vision loss, and understands his frustration with the prison medical and grievance systems. Nevertheless, plaintiff's factual allegations in his complaint show that his claims against defendants Curry and Gregory arose from events or omissions at the Byrd Unit in August 2021 and September 2021 and that plaintiff knew by September 21, 2021, when he was transferred to the Wallace Unit, that he had not been seen by a specialist or provided certain treatment for his vision symptoms at the Byrd Unit. Defendants' probative summary judgment evidence shows that TDCJ's formal, written grievance process requires inmates to file step 1 grievances within fifteen days after the event made the basis of their grievance occurred. The uncontroverted summary judgment evidence submitted by defendants establishes that plaintiff did not file his step 1 grievance as to Curry and Gregory until August 4, 2022. Because plaintiff's step 1 grievance was not timely filed and was, in fact, returned unprocessed by prison officials as untimely, plaintiff did not exhaust his administrative remedies. Plaintiff does not allege and show that he filed a *timely* grievance against Curry and Gregory, or that he filed a grievance against them not otherwise appearing in defendants' summary judgment exhibits.

Plaintiff provides no basis upon which this Court could hold his August 2022 grievances timely or properly filed, nor does he argue, much less establish for purposes of FRCP 56, that the grievance process was unavailable to him during August – October 2021. As a result, plaintiff fails to raise a genuine issue of material fact as to his exhaustion of

administrative remedies regarding defendants Curry and Gregory, and they are entitled to summary judgment dismissal of plaintiff's claims against them as barred by failure to exhaust.

It is clear that the applicable time deadlines for pursuing timely administrative grievances as to plaintiff's claims have long expired, and that the claims should be dismissed with prejudice.  *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded). Plaintiff's claims against defendants Curry and Gregory under section 1983 are **DISMISSED WITH PREJUDICE** for failure to exhaust.

### III.   STATE LAW CLAIMS

Plaintiff raises state law claims against Curry and Gregory for negligence and/or malpractice.  Plaintiff argues that the Court should exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

With respect to supplemental jurisdiction, "a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id*. (citing 28 U.S.C. § 1367(c)).

Under 28 U.S.C. § 1367(c)(3), the "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." The general rule in this circuit "is that a court should decline to exercise jurisdiction over remaining state law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc*., 554 F.3d 595, 602 (5th Cir. 2009). In deciding whether to exercise supplemental jurisdiction, the courts must balance the factors of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51 (1988).

In this case, the Court has dismissed all claims over which it has original jurisdiction, and declines to exercise jurisdiction over plaintiff's pendent state law claims. *See Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 396 (5th Cir. 2020). Further, the factors of judicial economy, convenience, fairness, and comity weigh in favor of allowing the state courts to address plaintiff's issues of state law.

Plaintiff's state law claims against defendants Curry and Gregory are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the above reasons, defendants' motion for summary judgment (Docket Entry No. 18) is **GRANTED**, and plaintiff's section 1983 claims against defendants Curry and Gregory are **DISMISSED WITH PREJUDICE** for failure to exhaust.

The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against defendants Curry and Gregory and the claims are **DISMISSED WITHOUT PREJUDICE**.

Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on this the  12th day of August, 2024.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE